1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CAROL R. SILVA, | ) | Case No. CV 12-6896-SP |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) | |
| Defendant. | ) | |

**I.**

**INTRODUCTION**

On August 15, 2012, plaintiff Carol R. Silva filed a complaint against the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issue for decision: whether the

1

1 | Administrative Law Judge ("ALJ") properly considered the opinion of examining
2 | physician, Dr. Andrew L. Sew Hoy.  Memorandum of Points and Authorities in
3 | Support of Plaintiff's Complaint ("P. Mem.") at 4-7; Defendant's Memorandum in
4 | Support of Answer ("D. Mem.") at 1-2.[1]

5 |      Having carefully studied, inter alia, the parties's moving papers, the
6 | Administrative Record ("AR"), and the decision of the ALJ, the court concludes
7 | that, as detailed herein, the ALJ improperly rejected Dr. Hoy's opinion without
8 | providing specific and legitimate reasons supported by substantial evidence for
9 | doing so, but the error was harmless.  Consequently, this court affirms the decision
10 | of the Commissioner denying benefits.

11 | **II.**

12 | **FACTUAL AND PROCEDURAL BACKGROUND**

13 |      Plaintiff, who was fifty years old on the date of her June 8, 2011
14 | administrative hearing, has a tenth grade education.  AR at 136, 138, 177, 1676.
15 | Her past relevant work was as a grocery bagger, sandwich counter attendant,
16 | grocery stock clerk, deli cutter/slicer, pharmacy clerk, grocery checker, and retail
17 | sales clerk.  *Id*. at 1507-08.

18 |      On April 15, 2001, plaintiff filed an application for a period of disability
19 | and DIB, alleging an onset date of September 7, 2000, due to neck, shoulder, and
20 | back pain.  *Id.* at 171, 180, 1537.  The Commissioner denied plaintiff's application
21 | initially, after which she filed a request for a hearing.  *Id.* at 53.

22 |      On February 5, 2003, plaintiff, represented by counsel, appeared and
23 | testified at a hearing before ALJ James Paisley.  *Id.* at 1421-50.  ALJ Paisley also
24 | heard testimony from Jane Haile, a vocational expert.  *Id.* at 1438, 1448-53.  On

25 |

26 | _____

27 |    [1]  Defendant's Memorandum in Support of Answer addresses the ALJ's second decision, dated October 27, 2006, and not the decision at issue.  *See* D.
28 | Mem. at 12

March 25, 2003, ALJ Paisley denied plaintiff's claim for benefits (the "2003 Decision"). *Id.* at 82-86.

Plaintiff requested a review of the 2003 Decision by the Appeals Council. *Id.* at 87. On October 9, 2003, the Appeals Council vacated the 2003 Decision and remanded the case. *Id.* at 97-98. The Appeals Council ordered ALJ Paisley to: (1) obtain additional medical evidence regarding plaintiff's mental and/or physical impairments; (2) provide clear and convincing reasons for discounting plaintiff's credibility, including the specific limitations; (3) provide legally sufficient reasons for discounting the opinions of a third party and treating source; (4) further consider plaintiff's residual functional capacity ("RFC")[2] in light of the additional medical evidence; and (5) if warranted, secure a vocational expert to clarify the effect of the limitations, identify appropriate jobs, and resolve any conflicts with the Dictionary of Occupational Titles. *Id.* at 98.

On June 28, 2005, plaintiff appeared and testified at a second hearing, this time before ALJ Richard Urbin.[3] *Id.* at 1458-1518. Dr. Glenn Griffin, a medical expert (who is a psychologist), and Elizabeth Ramos-Brown, a vocational expert, also provided testimony. *Id.* at 1494-1515. On October 27, 2006, the ALJ denied plaintiff's claim for benefits (the "2006 Decision"). *Id.* at 18-41.

Plaintiff requested a review of the 2006 Decision by the Appeals Council. *Id.* at 1549. On March 24, 2009, the Appeals Council denied plaintiff's request for review. *Id.* at 1549-52.

---

[2]   Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

[3]   All references to the ALJ hereafter are to ALJ Urbin.

On May 13, 2009, plaintiff filed a complaint in this court, No. CV 09-3390, seeking a review of the Commissioner's denial of benefits. On November 23, 2009, the parties entered into a stipulation to remand the case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g). This court ordered that this case be remanded to the Commissioner on January 7, 2010. *Id.* at 1554-55.

On March 17, 2010, the Appeals Council effectuated this court's order, vacated the 2006 Decision, and remanded the case to the ALJ for further proceedings. *Id.* at 1558-59. The Appeals Council ordered the ALJ to: (1) further consider the fibromyalgia diagnosis; and (2) further evaluate plaintiff's subjective complaints. *Id.* at 1559.

On June 8, 2011, plaintiff appeared and testified at a third hearing before the ALJ. *Id.* at 1676-1714. Howard Goldfarb, a vocational expert, also testified. *Id.* at 1699-1712. On August 26, 2011, the ALJ, incorporating the non-erroneous findings and discussions from the 2006 Decision, again denied plaintiff's claim for benefits (the "2011 Decision"). *Id*. at 1532-43.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability, September 7, 2000, through the date last insured, June 30, 2006  *Id.* at 1535.

At step two, the ALJ found that plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbosacral spine; chondromalacia of the right knee; psychological factors affecting medical condition; multifactorial headaches; adjustment disorder or major depressive disorder;[4] and fibromyalgia. *Id*. at 24, 1535.

---

[4]   From December 2001 through early 2004, plaintiff had an adjustment disorder. AR at 24. In early 2004, the diagnosis was changed to a major depressive disorder. *Id.*

1    At step three, the ALJ found that plaintiff's impairments, whether

2    individually or in combination, did not meet or medically equal one of the listed

3    impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the

4    "Listings").  *Id.* at 1535.

5        The ALJ then assessed plaintiff's RFC and determined that she had the RFC

6    to perform simple, repetitive work with the following limitations: she could

7    lift/carry 50 pounds occasionally and 25 pounds frequently; she could

8    stand/walk/sit for six hours in an eight-hour workday; and she could not perform

9    repetitive bending or stooping, but she could frequently bend and stoop.  *Id.* at

10   1535-36.

11       The ALJ found, at step four, that plaintiff was capable of performing her

12   past relevant work as a deli cutter.  *Id.* at 1542.  Consequently, the ALJ concluded

13   that plaintiff did not suffer from a disability as defined by the Social Security Act

14   from September 7, 2000 through June 30, 2006.  *Id.* at 1543.

15       Plaintiff filed a timely request for review of the ALJ's decision, which was

16   denied by the Appeals Council.  *Id.* at 1526-28.  The ALJ's decision stands as the

17   final decision of the Commissioner.

18                                 **III.**

19                        **STANDARD OF REVIEW**

20       This court is empowered to review decisions by the Commissioner to deny

21   benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security

22   Administration must be upheld if they are free of legal error and supported by

23   substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)

24   (as amended).  But if the court determines that the ALJ's findings are based on

25   legal error or are not supported by substantial evidence in the record, the court

26   may reject the findings and set aside the decision to deny benefits.  *Aukland v.*

27   *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d

28

                                     5

1  1144, 1147 (9th Cir. 2001).

2  "Substantial evidence is more than a mere scintilla, but less than a

3  preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such

4  "relevant evidence which a reasonable person might accept as adequate to support

5  a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

6  F.3d at 459. To determine whether substantial evidence supports the ALJ's

7  finding, the reviewing court must review the administrative record as a whole,

8  "weighing both the evidence that supports and the evidence that detracts from the

9  ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be

10  affirmed simply by isolating a specific quantum of supporting evidence.'"

11  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

12  Cir. 1998)). If the evidence can reasonably support either affirming or reversing

13  the ALJ's decision, the reviewing court "'may not substitute its judgment for that

14  of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

15  1992)).

16  **IV.**

17  **DISCUSSION**

18  Plaintiff argues that the ALJ improperly rejected the opinion of examining

19  physician, Dr. Hoy. P. Mem. at 4-7. Specifically, plaintiff contends that the ALJ

20  failed to give a specific and legitimate reason for rejecting Dr. Hoy's opinion

21  regarding plaintiff's bilateral upper extremities impairment and limitations. *Id.*

22  In determining whether a claimant has a medically determinable

23  impairment, among the evidence the ALJ considers is medical evidence. 20

24  C.F.R. § 404.1527(b). In evaluating medical opinions, the regulations distinguish

25  among three types of physicians: (1) treating physicians; (2) examining

26  physicians; and (3) non-examining physicians. 20 C.F.R. § 404.1527(c), (e);

27  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a

28

6

1 treating physician's opinion carries more weight than an examining physician's,
2 and an examining physician's opinion carries more weight than a reviewing
3 physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20
4 C.F.R. § 404.1527(c)(1)-(2).  The opinion of the treating physician is generally
5 given the greatest weight because the treating physician is employed to cure and
6 has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*,
7 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th
8 Cir. 1989).

9          Nevertheless, the ALJ is not bound by the opinion of the treating physician.
10 *Smolen*, 80 F.3d at 1285.  If a treating physician's opinion is uncontradicted, the
11 ALJ must provide clear and convincing reasons for giving it less weight. *Lester*,
12 81 F.3d at 830.  If the treating physician's opinion is contradicted by other
13 opinions, the ALJ must provide specific and legitimate reasons supported by
14 substantial evidence for rejecting it. *Id.* at 830.  Likewise, the ALJ must provide
15 specific and legitimate reasons supported by substantial evidence in rejecting the
16 contradicted opinions of examining physicians. *Id.* at 830-31.  The opinion of a
17 non-examining physician, standing alone, cannot constitute substantial evidence.
18 *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v.
19 Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d
20 813, 818 n.7 (9th Cir. 1993).

21          **Dr. Hoy**[5]
22          Dr. Hoy, an examining orthopedic surgeon for plaintiff's workers'
23 compensation claim, examined plaintiff on two occasions, on October 30, 2001
24 and March 4, 2004.  AR at 409, 844.  During the 2001 examination, Dr. Hoy

27 [5]   Because plaintiff only disputes Dr. Hoy's opinion regarding plaintiff's
upper extremities, this court will limit its discussion of the medical evidence to
28 plaintiff's upper extremities.

7

observed that plaintiff had:  tenderness over the lateral epicondyle; reduced range of motion of the cervical spine; neck and upper back pain upon abduction of her shoulders; and shoulder pain upon palmar flexion of the wrists.  *Id.* at 415. Dr. Hoy noted that plaintiff had no gross motor loss or sensory loss.  *Id.* at 416.  Dr. Hoy also reviewed plaintiff's medical records and noted that the results of an electromyography ("EMG") of her upper extremities were normal.  *Id.* at 419; *see also id.* at 278.  Dr. Hoy specifically noted that plaintiff's level of subjective complaint was greater than expected given the objective findings and testing.  *Id.* at 420.  Dr. Hoy's impression was that plaintiff had bilateral shoulder sprains and strains and opined that plaintiff be restricted from very heavy lifting and very repetitive work with the upper extremities at or above the shoulder level.  *Id*. at 420-22.

During the 2004 examination, Dr. Hoy observed that, during the historical interview, plaintiff did not appear to be in any acute distress, sat erectly, and moved her upper extremities without any obvious discomfort.  *Id.* at 847.  Plaintiff informed Dr. Hoy that she only had pain if someone touched her, but not if she touched herself.  *Id.*  Dr. Hoy observed that plaintiff moved her upper extremity joints slowly and accompanied by facial grimaces.  *Id.*  As in 2001, plaintiff had no motor or sensory loss and had shoulder pain when her shoulders were abducted. *Id.* at 848.  Dr. Hoy also again observed that plaintiff's subjective complaints were greater than to be expected, but stated that fibromyalgia was a plausible reason for the discrepancy.  *Id.* at 854.  Dr. Hoy noted that plaintiff, inter alia:  had reduced range of motion of her cervical spine; had milcrepitus to range of motion testing of the cervical spine; complained of tenderness to light touch involving the neck and upper extremities; complained of pain to resisted abduction of both shoulders.  *Id.* at 847-48.  Based on his examination and review of plaintiff's medical records, Dr. Hoy diagnosed plaintiff with fibromyalgia, musculoligamentous strain and sprain

and myofasciitis of both shoulders, and right elbow and wrist tendinitis, and restricted her to no work with the upper extremities at or above shoulder level. *Id.* at 853-55.

### Other Treating and Examining Physicians

Several other physicians offered opinions as to plaintiff's alleged upper extremities impairment and limitations.

Dr. Charles Schwarz, an orthopedic surgeon, treated plaintiff from October 3, 2000 through 2008, as part of her workers' compensation claim. *See* AR at 250, 1059.  During the initial examination, Dr. Schwarz noted that there was a reduced range of motion in the external rotation, tenderness over the biceps tendon, right elbow, and right wrist, and no motor or sensory loss. *Id.* at 254-55.  The x-rays of the cervical spine, wrist, and elbow were normal. *Id.* at 256.  In Dr. Schwarz's initial report on October 3, 2000, he had the impression that plaintiff had:  cervical spine musculoligamentous sprain; biceps tendinitis, bilateral shoulders; lateral epicondylitis, right elbow; and tendinitis, right wrist. *Id.* at 257.

Dr. Harry Marinow, a consultative orthopedic surgeon examined plaintiff on November 21, 2000. *Id.* at 217-29.  Dr. Marinow noted no objective factors of disability on examination of plaintiff's bilateral shoulders, right elbow, right forearm, and right wrist, and found that her subjective symptoms were "significantly magnified and out of proportion with objective findings." *Id*. at 225-26.  Consequently, he opined no restrictions with respect to plaintiff's upper extremities. *Id.* at 227.  The ALJ gave less weight to Dr. Marinow's opinion because he received much more evidence after Dr. Marinow issued his opinion. *Id.* at 1539.

Dr. Noel Lee Chun, an anesthesiologist specializing in pain management, treated plaintiff from September 17, 2001 though 2002. *See id.* at 343, 512.  During his initial examination, Dr. Chun observed that:  the flexion, extension,

1   and rotation of the cervical produced neck and shoulder pain; and there was pain

2   with range of motion activity and physical exertion of the right wrist but the range

3   of motion was intact. *Id.* at 347-48.  Dr. Chun assessed that plaintiff had strain

4   and sprain of the bilateral shoulders and right elbow and wrist tendinitis, and

5   recommended trigger point injections. *Id*. at 348-49.  Subsequently, on February

6   6, 2002, Dr. Chun noted that plaintiff experienced an improvement in neck and

7   shoulder pain from the trigger point injections. *Id.* at 542.  Dr. Chun and his

8   associates appear to have focused on plaintiff's lower back pain and provided no

9   further treatment of plaintiff's shoulders and neck after the trigger point injections.

10  *See, e.g., id*. at 512-41.

11      Dr. William C. Boeck, a consultative orthopedic surgeon, examined plaintiff

12  on December 11, 2001. *Id.* at 292-97.  Dr. Boeck observed that plaintiff had a

13  reduced range of motion in the neck, normal range of motion in the shoulders and

14  no tenderness or weakness in the upper extremities. *Id.* at 294-95.  Dr. Boeck

15  opined that plaintiff could:  lift/carry 100 pounds occasionally and 50 pounds

16  frequently; and stand/walk/sit six hours in an eight-hour day. *Id.* at 297.  As with

17  Dr. Marinow, the ALJ gave less weight to Dr. Boeck's opinion because he

18  received much more evidence subsequent to De. Boeck's opinion. *Id.* at 1539.

19      Dr. Kohsrow Tabaddor, an orthopedic surgeon, treated plaintiff for

20  approximately three years beginning in March 2001. *Id.* at 596, 1684.  Dr.

21  Tabaddor observed that plaintiff had tenderness of the anterior aspect of both

22  shoulders and movement of the shoulders, elbows, and wrists were painful in all

23  directions. *Id.* at 599.  In December 2002, Dr. Tabaddor attributed plaintiff's

24  upper extremities pain to fibromyalgia and opined that she should not engage in

25  forceful strength activities of the upper extremities and use of arms above should

26  level. *Id.* at 611.  In a subsequent report dated August 26, 2004, Dr. Tabaddor

27  diagnosed plaintiff with fibromyalgia and sprain/strain of the shoulders and

28

1   elbows and opined the same restrictions as he did in 2002. *Id.* at 925-26. The ALJ

2   rejected Dr. Tabaddor's opinion, which rejection plaintiff did not appeal, on the

3   basis that the objective evidence did not support it. *Id.* at 1541. Specifically, the

4   ALJ found that because Dr. Tabaddor did not diagnose any orthopedic

5   impairment, and because plaintiff has a general lack of credibility, there is "no

6   objective basis for Dr. Tabaddor's opinion regarding any limitations associated

7   with fibromyalgia." *Id.*

8        Dr. Ronald D. Zlotolow, an internist, treated plaintiff in 2002. *Id.* at 498.

9   Dr. Zlotolow opined that plaintiff had fibromyalgia, but provided no objective

10   findings to support his diagnosis . *See, e.g., id.* at 505-07.

11        Dr. Allen I. Salick, a rheumatologist, treated plaintiff in 2004. *See id.* at

12   945. Dr. Salick observed that plaintiff had tender points and diagnosed her with

13   fibromyalgia. *See, e.g., id.* at 946-47.

14        Dr. Timothy C. Reynolds, an internist, examined plaintiff on three occasions

15   in 2004 and 2008. *Id.* at 930-41, 1286-99, 1316-33. In February 2004, Dr.

16   Reynolds observed tender points characteristic of fibromyalgia. *Id.* at 1322, 1331.

17   In September 2004, Dr. Reynolds observed that plaintiff was comfortable when he

18   touched her with a stethoscope and was distracted, but "frequently writhed and

19   wept" when he touched her with his fingers and was reminded of her condition.

20   *Id.* at 933-34, 938. Dr. Reynolds opined that plaintiff had fibromyalgia but there

21   was a "prominent emotional component to" plaintiff's physical discomfort. *Id.* at

22   934, 938. In March 2008, Dr. Reynolds observed that plaintiff had tender points

23   but the examination "probably [had] no diagnostic significance" because her

24   "musculoskeletal examination was remarkable for pain wherever she was

25   touched." *Id.* at 1290. Dr. Reynolds also examined two surveillance videos of

26   plaintiff from October 2004 in which she was observed:  walking; climbing in and

27   out of a van; carrying several small packages and placing them in a van; bending

28

over, picking up, and carrying a stack of buckets; dragging a plastic trash bag with her left hand; carrying a bucket with each hand (content unknown); carrying empty buckets; and sweeping a walkway. *Id*. at 1294.  Dr. Reynolds noted that there was a discrepancy between plaintiff's behavior in and out of his office, and opined that plaintiff was "probably more capable" than she thought. *Id.* at 1295. Despite the discrepancy, Dr. Reynolds reiterated his opinion that plaintiff had fibromyalgia and that her limitations resulted from a combination of physical and psychiatric causes. *Id.* at 1295.

### The ALJ's Findings

The ALJ concluded that plaintiff had no upper extremities limitations because she did not have a severe upper extremities impairment. *Id*. at 24, 1535, 1541.  In reaching that determination, the ALJ stated that there was no objective evidence, from an orthopedic perspective, to support the opinion of Dr. Hoy.[6]  *Id.* at 25, 1541.  Specifically, the ALJ noted that:  plaintiff had normal x-rays of the wrists, elbows, and shoulders; two EMG studies showed no neuropathy or radiculopathy; and plaintiff had a normal MRI of the upper extremities. *Id.* at 25, 278, 345, 596, 996, 1238-39  Although plaintiff displayed some symptoms such as reduced range of motion, the ALJ noted that plaintiff could control those aspects of the examinations. *Id.* at 25.  As such, the ALJ concluded that the opinion of Dr. Hoy – who, the ALJ indicated, either only could or only did offer an opinion on orthopedic causes for plaintiff's pain – was unsupported by the objective medical evidence. *Id.* at 1541.

The ALJ erred because he failed to give a specific and legitimate reason supported by substantial evidence for rejecting Dr. Hoy's opinion that plaintiff had

---

[6]   As discussed *supra*, Dr. Tabaddor also opined that plaintiff had an upper extremities impairment and limitations, but the ALJ rejected that opinion, and plaintiff has not challenged the ALJ's rejection of Dr. Tabaddor's opinion. *See* P. Mem. at 4-7.

1  a severe upper extremities impairment.[7]  Had Dr. Hoy only offered an orthopedic

2  cause for plaintiff's impairment as the ALJ implied, the ALJ's reason for rejecting

3  it would be sufficient.  The ALJ correctly noted that although Dr. Hoy observed

4  tenderness and reduced range of motion, plaintiff, whose credibility was

5  discounted, could control those results.  *Id.* at 25.  The ALJ properly found none of

6  the objective tests supported the physical examination findings or showed an

7  orthopedic cause for plaintiff's pain.  *See id.* at 25, 1541.  Other than small inferior

8  osteophytes from the acromion and the clavicle, three sets of x-rays, two EMG

9  studies, and an MRI of the upper extremities all were normal.  *Id.* at 256, 345, 278,

10 596, 996, 1238-39.  Because the evidence can reasonably support the ALJ's

11 conclusion that objective medical evidence did not support an orthopedic cause for

12 the pain, the court must accept the ALJ's finding.  *Aukland*, 257 F.3d at 1035.

13        But Dr. Hoy did not rely solely on orthopedic causes for his diagnosis.  Dr.

14 Hoy also noted that plaintiff displayed fibromyalgia symptoms.  AR at 854.

15 Orthopedic surgeons such as Dr. Hoy may diagnose and treat fibromyalgia.  *See*

16 http://www.webmd.com/fibromyalgia/guide/finding-right-fibromyalgia-

17 doctor-fibromyalgia-specialist.  Thus, it is not a specific and legitimate reason to

18 reject Dr. Hoy's opinion that plaintiff suffered from an upper extremities

19 impairment simply because there was no objective evidence to support an

20 orthopedic cause for the pain.  The ALJ either failed to recognize that Dr. Hoy

21 could diagnose fibromyalgia or failed to recognize that Dr. Hoy did diagnose

22 plaintiff as having fibromyalgia.  That diagnosis could, and did, serve as a basis

23 for Dr. Hoy's opinion.

24        But the ALJ's failure to give a specific and legitimate reason for rejecting

25 Dr. Hoy's opinion that plaintiff had a severe upper extremities impairment and

26

27     [7]   Because ALJ gave the opinions of Dr. Harinow and Dr. Boeck less weight
without rejecting them, this court will treat Dr. Hoy's opinion as contradicted.  *See*
28 *id.* at 1539.

limitations resulting from the impairment, to the extent the opinion rested on his fibromyalgia diagnosis, is harmless.  Dr. Hoy's opined upper extremities limitations were based on subjective fibromyalgia symptoms.  An ALJ may reject an opinion that is premised on properly discredited subjective complaints.  *See Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (an ALJ may disregard a physician's opinion that was based on discounted subjective complaints).  Here, the ALJ discounted plaintiff's credibility regarding her symptoms and limitations.[8]  Plaintiff did not challenge the ALJ's credibility determination and thus has waived any such argument.  *See Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) (arguments not raised on appeal are generally waived).

While the ALJ did not expressly reject Dr. Hoy's opinion because it was based on plaintiff's discredited subjective complaints of fibromyalgia symptoms, he did expressly reject Dr. Tabaddor's opinion on this basis.  AR at 1541.  This reasoning articulated by the ALJ applies equally to Dr. Hoy's opinion.  Indeed, the ALJ concluded the paragraph in which he rejected Dr. Hoy's opinion on upper extremity limitations by reiterating that he did "not find credible [plaintiff's] allegations regarding upper extremity limitations as they might relate to fibromyalgia," possibly attempting to articulate this as an additional reason to reject Dr. Hoy's opinion.  Accordingly, the ALJ's error in rejecting Dr. Hoy's opinion was harmless.

---

[8]    The ALJ provided numerous reasons for discounting plaintiff's credibility. AR at 1537-38.  First, several physicians noted that plaintiff's symptoms were disproportionate to the objective findings.  *See id.* at 225, 420,1537-38.  Second, multiple physicians noted that plaintiff did not display any symptoms when distracted or by her own touch.  *See id.* at 847, 933, 937, 1538.  Third, several physicians opined a psychological component to plaintiff's symptomatology.  *See id.* at 933, 937-39, 1029, 1537.  Finally, two surveillance videos from October 2004 showed plaintiff, inter alia, walking, carrying items, and sweeping without any difficulty, actions which were in sharp contrast to plaintiff's alleged limitations.  *Id.* at 1294-95.

## V.

## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: July 10, 2013

_____
SHERI PYM
United States Magistrate Judge

15